1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7   JOSEPHINE PALAFOX,                         Case No. 20-cv-07944-HSG

8               Plaintiff,

9        v.                                    **ORDER GRANTING PLAINTIFF'S
                                               MOTION FOR SUMMARY
10  KILOLO KIJAKAZI, Acting                    JUDGMENT AND DENYING
    Commissioner of Social Security,           DEFENDANT'S CROSS-MOTION FOR
                                               SUMMARY JUDGMENT**
11              Defendant.
                                               Re: Dkt. Nos. 17, 20

12

13          Defendant Andrew Saul,[1] the former Commissioner of the Social Security Administration,

14  acting in his official capacity, denied Plaintiff Josephine Palafox's application for Supplemental

15  Security Income ("SSI").  Dkt. No. 1.  Plaintiff seeks judicial review of that decision.  For the

16  reasons set forth below, the Court **GRANTS** Plaintiff's motion for summary judgment, *see* Dkt.

17  No. 17 ("Pl. Mot."), and **DENIES** Defendant's cross-motion for summary judgment, *see* Dkt. No.

18  20 ("Def. Mot.").

19  **I.    BACKGROUND**

20          In a prior application for disability benefits, the claimant was found able to perform

21  unskilled sedentary labor in a hearing decision issued on March 25, 2015.  AR 115-41.[2]  The

22  Appeals Council upheld the decision on July 29, 2016, and the U.S. District Court for the District

23  of Northern California affirmed on March 23, 2018.  *Id.* at 115-41, 207-41.  On September 7,

24  2018, Plaintiff filed for Title II and Title XVI benefits under the Social Security Act, alleging

25

26  ───────────────
    [1] The acting Commissioner of the Social Security Administration is Dr. Kilolo Kijakazi. She is
27  substituted for her predecessor, Andrew Saul, as Defendant in this action under Fed. R. Civ. P.
    25(d).
28  [2] Due to its size, the Administrative Record, filed as Dkt. No. 14, is broken into twelve parts.
    The Court refers to these documents collectively as the "AR," and cites to its internal pagination.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2   disability since March 26, 2015, one day after the unfavorable decision.  AR 324-37; AR 115-141.

3   That claim ultimately was denied on November 28, 2018, and denied on reconsideration on April

4   4, 2019.  *Id.* at 115-41, 243, 248, 255, 261, 324-37.  On February 26, 2020, a different

5   administrative law judge, Matilda Surh ("ALJ"), held a hearing.  AR 81-114 (hearing transcript).

6   On March 23, 2020, the ALJ issued a partially favorable decision for Plaintiff, finding that she

7   was not disabled prior to April 27, 2016, but became disabled on that date and continued to be

8   disabled through the date of the decision.  *Id.* at 12-30.[3]

9       The ALJ followed the five-step sequential evaluation process mandated for disability

10  claims under 20 C.F.R. § 404.1520(a) and ultimately found that Plaintiff was not disabled through

11  June 30, 2015, meaning she was not eligible for Title II benefits as that was the last date she was

12  insured.  AR 12-30.  The ALJ incorporated the findings and discussion of the March 2015

13  decision.  AR 12-30, 115-41.  The Appeals Council denied Plaintiff's request for review on

14  September 18, 2020.  AR 1.

15      Step One requires the ALJ to determine whether the claimant is working in "substantial

16  gainful activity," defined as work done for pay or profit and involving significant mental or

17  physical activities.  *See* 20 C.F.R. §§ 404.1520(b), 404.1572.  At the outset, the ALJ stated she

18  considered the entire record.  AR 19.  At step one, the ALJ determined that Plaintiff had not

19  engaged in "substantial gainful activity" since the onset of her alleged disability.  *Id.*

20      Step Two directs the ALJ to determine whether the claimant has a severe impairment or

21  combination of impairments that significantly limit her ability to work.  *See* 20 C.F.R. §

22  404.1520(c).  At step two, the ALJ found the following alleged impairments to be severe:

23  degenerative disc disease of the cervical spine, status post cervical decompression and fusion;

24  right lateral epicondylitis; right knee osteoarthritis; and right wrist tendonitis.  AR 19.  The ALJ

25  also determined that Plaintiff's claims of depression and anxiety were non-severe, finding that

26

27  [3] On April 27, 2016, Plaintiff's age category changed when she reached age 50.  AR 21.

28

Plaintiff's "medical records do not document any significant limitations and/or treatments from a qualified medical source for the necessary durational requirement of 12-consective months." *Id.*

The ALJ found persuasive the medical evaluation of State Agency reviewing psychiatrist L. Colsky, M.D., finding that Plaintiff had "mild limitations based on depression and anxiety." AR 151. The ALJ found the assessment of the State Agency reviewing psychiatrist H. Amado, M.D., and consultative examiner Jacklyn Chandler, Psy.D., that Plaintiff suffered from "moderate" mental limitations to be unpersuasive because "the claimant has no history of any consistent mental health treatment and no evidence of any need for in-patient psychiatric care." AR 19. The ALJ did not address a letter written by Carol Helander, a marriage and family therapist. AR 1160. The ALJ also did not address an anxiety medication prescribed by Holly Reese, a physician assistant. *See generally* AR 549 – 691.

At Step Three, the ALJ determines whether the claimant's impairment, or combination of impairments, medically "meets or equals" an impairment listed in 20 C.F.R., pt. 404, subpt. P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. "That bureaucratic mouthful means the ALJ must see if the claimant's impairment matches the criteria for disabling conditions listed in the regulations." *Petrini v. Colvin*, No. 14-CV-01583-JD, 2015 WL 5071931, at *1 (N.D. Cal. Aug. 27, 2015), *aff'd sub nom. Petrini v. Berryhill*, 705 F. App'x 511 (9th Cir. 2017) (quotation omitted). Here, while acknowledging Plaintiff's testimony that she "suffers from pain on an everyday basis," the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or equals the required criteria. AR 20-21. The ALJ based her decision on Plaintiff's testimony and on the opinions of State Agency reviewing physicians, ultimately finding that "though the claimant has some medical evidence to support her allegations, the evidence is not sufficient for a finding of meeting or equaling a listing, per the code." *Id.* at 21.

At Step Four, if the claimant does not have a listed impairment, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work. 20

United States District Court
Northern District of California

C.F.R. § 404.1520(a)(4)(iv), (e), (f); *see also id.* § 404.1545.  In considering the claimant's

symptoms, the ALJ must first consider whether there is an underlying medically determinable

physical or mental impairment that could reasonably be expected to produce the claimant's pain or

other symptoms.  *See id.* § 404.1529; Social Security Ruling 16-3p.  The ALJ must consider all

impairments, even those that are not severe.  20 C.F.R. § 404.1545(a)(2).  Once the underlying

impairment has been shown, the ALJ must then evaluate the intensity, persistence, and limiting

effects of the claimant's symptoms.  *See id.* § 404.1529.  At step four, the ALJ found that Plaintiff

"has the residual functional capacity to perform sedentary work."  AR 20.  The ALJ found

Plaintiff's subjective complaints inconsistent with evidence in the record, noting that she "is able

to complete all her own activities of daily living," including "grocery shopping unattended[,][4] . . .

driv[ing] a car and [going] out alone."  *Id.*  The ALJ found "some of the physical and mental

abilities and social interactions required in order to perform [the reported daily] activities . . . are

the same as those necessary for obtaining and maintaining employment."  *Id.* at 21.

      The ALJ reviewed Plaintiff's hearing testimony, Function Report Form, Asthma

Questionnaire, and statements she made to Dr. Chandler.  *Id.* at 20.  The ALJ found "somewhat

persuasive," prior to the established onset date, the medical opinions of two State Agency

reviewing physicians, who opined that Plaintiff had a "range of medium work."  *Id*. at 22.[5]  The

ALJ concluded Plaintiff's testimony, the evidence of record, and the opinion evidence did not

support a finding of disability prior to the established onset date of April 27, 2016.  AR 22.

      Lastly, at Step Five the ALJ determines whether the claimant can adjust to other work

based on the claimant's age, education, work experience, and RFC.  20 C.F.R. §

---

[4] As Defendant acknowledges, the ALJ's conclusion that Plaintiff reported being able to shop
unattended was inaccurate.  Def. Mot. at 3 and n.3 (recognizing that ALJ's opinion was
inconsistent with AR 907).

[5] Dr. Colsky assessed Plaintiff's physical RFC, which included review of her capacity for
lifting/carrying, standing, walking sitting, pushing, and pulling, and found her to have a "Medium"
sustained work capability.  AR 156.  Her personalized disability explanation (PDE) stated that
Plaintiff's "condition is not severe enough to keep you from working."  *Id.*  Dr. Amado also found
Plaintiff's physical RFC to support a "Medium" sustained work capability, and her PDE
articulated that Plaintiff's "condition is not severe enough to keep you from working."  AR 186.

4

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

404.1520(a)(4)(v).  At step five, the ALJ concluded "[b]ased on the testimony of the vocational expert" and "considering the claimant's age, education, work experience, and residual functional capacity," that Plaintiff is capable of successfully finding work that exists in "significant numbers in the national economy."  AR 24.

## II.      LEGAL STANDARD

The Court has jurisdiction to review final decisions of the Commissioner.  *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").  The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial evidence or is based on legal error.  *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).  The threshold for "substantial evidence" is not high: "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  "The evidence must be more than a mere scintilla, but may be less than a preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless.  The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Molina*, 674 F.3d at 1111 (quotation omitted).

United States District Court
Northern District of California

1    **III.    DISCUSSION**

2            Plaintiff alleges that she suffers from pain in her hands, arms, and legs, stemming from

3    carpal tunnel syndrome, fibromyalgia, muscoskeletal pain, and degenerative disc disease, that has

4    made it impossible for her to work. *See generally* Pl. Mot. at 1-13.  Plaintiff received a series of

5    treatments for her pain, including chiropractic care, injections, and shoulder and neck surgery. *Id.*

6    Plaintiff also alleges that she suffers from post-traumatic stress disorder (PTSD), depression, and

7    anxiety stemming from childhood sexual abuse that limit her ability to conduct sedentary work.

8    *See id.* at 1-3, 5, 11.[6]

9            Plaintiff argues that the ALJ erred in denying her claim for disability benefits.  Pl. Mot. at

10   18.  First, Plaintiff contends that the ALJ failed to provide clear and convincing reasons to

11   discredit her statements about her symptoms.  Pl. Mot. at 1.  Second, Plaintiff argues the ALJ

12   erred in rejecting the medical opinions of examining psychologists based on evidence in the

13   medical record.  Pl. Mot. at 21-23; Dkt. No. 23 ("Pl. Reply") at 7-13.  Defendant responds that the

14   ALJ's determination was supported by substantial evidence and was not otherwise erroneous.

15   Because the Court finds that the ALJ did not provide specific, clear and convincing reasons for

16   discounting Plaintiff's subjective complaints, the Court grants Plaintiff's motion for summary

17   judgment, and remands for the ALJ to undertake the analysis required by Ninth Circuit authority.

18           **A.    Plaintiff's Subjective Complaints**

19           Where, as here, an ALJ does not find that a claimant is malingering and determines the

20   claimant "has provided objective medical evidence of an underlying impairment which might

21   reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's

22   testimony about the severity of those symptoms only by providing specific, clear, and convincing

23   reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).  To satisfy

24   the "clear and convincing reasons" requirement, "[g]eneral findings are insufficient; rather, the

25   ALJ must identify what testimony is not credible and what evidence undermines the claimant's

26

27   [6] The background for Plaintiff's initial medical assessment and appeal is laid out in *Palafox v. Berryhill*, No. 16-CV-05523-DMR, 2018 WL 1989519 (N.D. Cal. Mar. 23, 2018).

28                                                                                      6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998)).

The Ninth Circuit has held that an ALJ "may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("As [the Ninth Circuit] previously has explained, if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."). Additionally, "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681.

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective testimony about her symptoms as inconsistent with her activities of daily life, and in relying on the fact that no qualified medical professional found that she suffered from the alleged limitations prior to April 27, 2016. Pl. Mot. at 18-21; *see also* Pl. Reply at 2. Defendant argues that the ALJ's credibility determination was sufficiently specific in rejecting Plaintiff's testimony. Def Mot. at 3-5 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The Court agrees that the ALJ did not articulate a sufficient basis for rejecting Plaintiff's testimony regarding her symptoms.

### 1. ALJ's Identification of Where Plaintiff Made the Evaluated Statements About Her Symptoms

In evaluating the intensity, persistence and limiting effects of Plaintiff's symptoms, the ALJ "reviewed the claimant's testimony at the hearing, as well as her statements of record contained in a "Function Report—Adult" form dated November 14, 2018 (Exhibit B5E), an "Asthma Questionnaire" form dated November 14, 2018 (Exhibit B6E), [and] statements made to the psychological consultative examiner (Exhibit B6F)[.]" AR 20. The ALJ found "such testimony and statements consistent only to the extent they support the residual functional capacity described above." *Id.* at 20-21. The ALJ summarized Plaintiff's testimony about her symptoms as follows:

> The claimant testified that she stopped work due to pain in her hands and arms. She was diagnosed with carpal tunnel. In addition, her

7

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> neck, right shoulder and right elbow are painful and she has decreased range of motion.  She received chiropractor care for years. However, she eventually had shoulder surgery and neck surgery. She still suffers from pain on an everyday basis.

*Id.*

In the November 14, 2018 "Function Report—Adult" form, Plaintiff reported the following regarding her symptoms: she can dress and groom herself without reminders, prepare meals with help from her son, execute some household chores, drive minimal distances, go out alone, go grocery shopping, manage her own money, watch television, can follow written and spoken instructions, and is able to get along with authority figures.  AR 380-93 (Exhibit B5E). Throughout this document, Plaintiff reported significant pain in conducting her daily activities:

- In response to question "How do your illnesses, injuries or conditions limit your ability to work?," listing among other things "Neck—movement left to right up and down and hurts pulling tugging," and "Upper extremities—fermalagia [sic]—nerve pain, upper back, hand, finger."  *Id.* at 385.

- In response to prompt "Describe what you do from the time you wake up until going to bed," explaining that "Starting in morning I am in a lot of pain in upper extremities" and that Plaintiff "tr[ies] to do stretches but I have pain doing it . . . ."  *Id.* at 386.

- In response to question "Do the illnesses, injuries or conditions affect your sleep?," checking "yes" box and responding "Pain—neck, arms, wrist, nerve pain in feet."  *Id.*

- In discussion of meal preparation, reporting that "stirring food is a problem stuck [sic] to bend and hurts."  *Id.* at 387.

- In discussion of "house and yard work," reporting that "laundry is hard pulling and putting any [consistent] [sic] hurts I always have to stop in between."  *Id.*

- In response to prompt "If you don't do house or yard work, explain why not," reporting that "physically it's hard to do with my pain upper extremities[;] yard

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

can't do[;] very lite house cleaning." *Id.* at 388.

- In response to prompt "Check any of the following items your illness, injuries, or conditions affect," checking 15 of 19 boxes and referencing "upper extremities neck pain, squatting hurts," and referencing hand and wrist pain. *Id.* at 390.

- In summary section at end of report, stating "My day to day it's hurt from night to all day," and reporting "issues of my neck, turning hurts and also grasping holding things with chronic severe [tendonitis], arms and wrist, famiglia [sic], nerve pain . . . ." *Id.* at 392.

In the November 14, 2018 "Asthma Questionnaire," Plaintiff reported the following regarding her symptoms: she does not take inhaler medications because it makes her sick and instead takes steam showers and uses a steam machine, has never been hospitalized for more than 48 hours for a respiratory problem, and shortness of breath can affect her all day and take her weeks to recover. AR 396-98 (Exhibit B6E).

And the consultative examiner form contained the following characterization of Plaintiff's physical symptoms: she can complete all her activities of daily living with restrictions related to chronic pain, drive a car for short distances, do simple household chores, prepare meals, grocery shop unattended, and dress and groom herself. AR 906-909 (Exhibit B6F). Critically, the examiner noted that "[a]n additional obstacle to adequate work performance may be the claimant's medical opinion," and confirmed that "[t]his matter is beyond the scope of today's evaluation and is deferred to medical opinion." *Id.* at 909.

**2.    ALJ's Characterization of Plaintiff's Activities of Daily Living**

The ALJ described Plaintiff's activities of daily living as follows: "the claimant lives in a home with her older daughter and son; she rents out two rooms in the house and her daughter helps manage the renters; has difficulty dressing and bathing; has problems reaching in front of her; can drive a car; and texts on her smartphone." *Id.* The ALJ provided the following summary of Plaintiff's daily activities:

The claimant reported the following additional activities of daily

9

1
2
3
4
5
6
7

> living: on November 8, 2018—the claimant reported that she is able to complete all her own activities of daily living; can drive a car for short distances; can perform simple household chores; can prepare simple meals; can do grocery shopping unattended; and, is able to dress and groom herself (Exhibit B6F/3); and, on November 14, 2018—the claimant reported that she requires no reminders to care for her personal needs and grooming; prepares meals (son helps too); performs some household chores; drives a car and can go out alone; shops in stores; manages her own money; watches television; socializes and needs someone to go with her; gets along with others; has difficulty with written and spoken instructions, but just needs instructions repeated; and, gets along with authority figures (Exhibit B5E).

8
AR 21.

9
### 3.    The ALJ's Rejection of Plaintiff's Symptom Statements

10
The ALJ found Plaintiff's acknowledged activities of daily living "inconsistent with [her]

11
statements concerning the alleged intensity, persistence, and limiting effects of her symptoms,

12
prior to the established onset date." AR 21. In particular, the ALJ found that "*some* of the

13
physical and mental abilities and social interactions required in order to perform [the reported

14
daily activities] . . . are the same as those necessary for obtaining and maintaining employment."

15
AR 21 (emphasis added).

16
The ALJ also generally referenced the objective medical evidence in discounting

17
Plaintiff's testimony. Although the ALJ identified medical evidence prior to the EOD, showing

18
Plaintiff "receiving pain management treatment for her back and neck pain and some objective

19
evidence showing degenerative disc disease of the cervical spine," the ALJ found that "no

20
determination of a residual functional capacity limitation was made by any qualified treating

21
physician/psychiatrist/medical professional that would limit the claimant to the degree asserted by

22
the claimant, prior to the EOD." AR 22. The ALJ found "somewhat persuasive" the opinions of

23
the State Agency reviewing physicians, which found that Plaintiff was capable of a "medium

24
range of work." AR 156 (finding that Plaintiff demonstrates the maximum sustained work

25
capability of "medium"), AR 186 (same); AR 201 (same); *see also* AR 908 (finding that "the

26
claimant's ability to interact with the public, supervisors, and coworkers appears to be moderately

27
impaired"). Ultimately, the ALJ found that Plaintiff's "statements concerning the intensity,

28

United States District Court
Northern District of California

persistence and limiting effects of [her pain] symptoms are not fully supported . . . prior to the

EOD."  AR 22.

United States District Court
Northern District of California

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

###### a.     The ALJ Erred in Finding Plaintiff's Symptom Reports to be Inconsistent

The Court first finds that the ALJ erred in discounting Plaintiff's subjective complaints, because she did not identify specific inconsistencies between Plaintiff's testimony regarding her pain symptoms and her reported daily activities.  The Ninth Circuit has held that an ALJ may rely on daily activities inconsistent with a plaintiff's asserted limitations as a clear and convincing reason for finding a plaintiff's subjective complaints not credible, but when doing so must explain specifically which testimony is undermined by which specific activities.  *See Molina*, 674 F.3d at 1113 (affirming ALJ's finding that plaintiff's "claimed inability to tolerate even minimal human interaction was inconsistent with her daily activities throughout the disability period," including walking grandchildren to school, attending church, shopping and taking walks). Here, the ALJ found that "some of the physical and mental abilities and social interactions required in order to perform these activities, as noted above, are the same as those necessary for obtaining and maintaining employment," with the consequence that Plaintiff's "ability to participate in such activities is inconsistent with [her] statements concerning the alleged intensity, persistence, and limiting effects of her symptoms" prior to the onset date.  AR 21.  But that conclusion did not adequately identify what specifically was inconsistent with Plaintiff's reports of chronic pain that would preclude her from working, as required by Ninth Circuit precedent.  *See Brown-Hunter*, 806 F.3d at 494 (ALJ erred in discounting plaintiff's subjective complaints because "she did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination"); *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (ALJ erred in failing to "elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony"; substantial evidence did not support existence of conflict regarding ability to vacuum when claimant had consistently reported that she had trouble vacuuming); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996) (ALJ erred in rejecting plaintiff's testimony because the ALJ provided "no reasons" for rejecting account of the "'marked' limitations on

12

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[plaintiff's] activities of daily living").[7]  In sum, the ALJ did not satisfy the *Brown-Hunter* requirements in finding Plaintiff's testimony not credible.

### b.      The Error Was Not Harmless

The Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'"  *Molina*, 674 F.3d at 1115.  The ALJ also referenced the objective medical evidence of record and the fact that no reported opinion evidence determined a limitation on Plaintiff's RFC as bases for the finding that Plaintiff was not disabled.  AR 22.  Defendant is correct that courts may uphold an ALJ's credibility determination where the remaining reasons alone constitute clear and convincing evidence.  *See, e.g., Beltran v. Berryhill*, No. 17-CV-06674-NC, 2019 WL 201515, at *7 (N.D. Cal. Jan. 15, 2019) (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008)).  But because "lack of medical evidence cannot form the sole basis for discounting pain testimony," *Burch*, 400 F.3d at 681, the Court cannot say that this reason standing alone meets the clear and convincing standard.

The ALJ's reference to large swaths of the medical record also did not meet the clear and convincing standard.  As the Ninth Circuit explained in *Smartt v. Kijakazi*, an ALJ may discount a plaintiff's subjective pain testimony "by identifying specific discrepancies between her testimony and the objective medical evidence."  53 F.4th 489, 498 (9th Cir. 2022).  In *Smartt*, the court found that the ALJ "highlighted several inconsistencies between [plaintiff's] subjective symptom testimony and the objective medical evidence in the record, including record evidence about [plaintiff's] driving and her irregular use of mobility aids."  *Id.*  The ALJ had identified a "direct contradiction" in the claimant's testimony regarding her ability to drive, and pointed to inconsistencies in claimant's use of mobility aids when attending general medical appointments as opposed to pain center appointments and visits associated with her disability application.  *Id.* at

---

[7] By contrast, in the prior March 2015 decision, the ALJ clearly identified specific daily activities that the ALJ found to be inconsistent with the claimed limitations, and explained why.  AR 130-31.

497-498.

Here, the ALJ provided "[a] brief review of the medical evidence" related to Plaintiff's back and neck pain, degenerative disc disease (including a "successful cervical fusion surgery in September 2015"), bilateral lower extremity pain, and edema, concluding that "though the claimant has some medical evidence to support her allegations, the evidence is not sufficient for a finding of meeting or equaling a listing." AR 22 (citing Exhibits B3F/52-165, 174-226, 235-286, 299-312, B9F/10-26, B19F & B20F/2). The ALJ also stated that "[t]he vast majority of the claimant's medical evidence, after the EOD, shows work up for the additional severe impairments listed above which further support a finding of sedentary work (*see* Exhibits B1F/17-57, B2F, B3F/1-51, 166-173, 226-234, 287-298, B4F-B5F, B7F-B8F, B9F/1-9 & B10F-B18F)." AR 22. These references to what appears to be hundreds of pages of medical records, without identifying the source of the ALJ's specific characterizations, also did not explain what in those records was inconsistent with Plaintiff's pain symptom reports, or how. For this reason, the Court cannot find that the ALJ's *Brown-Colvin* error (i.e., not explaining the basis for discrediting Plaintiff's testimony as inconsistent with "some" of her daily activities) was harmless. *Cf. Smartt*, 53 F.4th at 499-500 (finding that "the ALJ's determination that [claimant's] self-reported activities were inconsistent with the constant '10/10' pain she described was not unreasonable").

The Court is mindful that "[i]t is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Smartt*, 53 F.4th at 500. But it views remand to be compelled here based on the Ninth Circuit authorities discussed in this order. *See id.* at 499 (explaining that "[u]ltimately, the 'clear and convincing' standard requires an ALJ to show his work," and finding the standard met where "the ALJ's rationale is clear enough that it has the power to convince," which was the case when "the ALJ cited specific, clear and convincing examples across a multi-year period contrasting [claimant's] subjective pain testimony with objective medical evidence"). On remand, the ALJ's analysis of Plaintiff's testimony and daily activities must "identify the testimony she found not credible" and "link that testimony to the

14

particular parts of the record supporting her non-credibility determination." *See Brown-Hunter*, 806 F.3d at 494.

### B.      Evaluation of Medical Findings And Opinions

Because the case is being remanded, the Court need not address Plaintiff's claim that the ALJ erred in evaluating the medical opinions as to her alleged continuous symptoms of depression and anxiety, including by failing to discuss Plaintiff's anxiety medication prescribed by physician assistant Reese.  Pl. Mot. at 5, 21-23; Pl. Reply at 7-12.  Plaintiff also argues that the ALJ erred in failing to address the letter by marriage and family therapist Helander.  Pl. Mot. at 21-241-23; Pl. Reply at 12-14.  These issues do not appear to have been raised squarely before the ALJ, and Plaintiff did not raise her argument about the medications prescribed by Ms. Reese before even this Court until her reply brief.  It is appropriate for the ALJ to address these issues in the first instance on remand.  *See generally* AR 549 – 691, 1160.

## IV.      CONCLUSION

The Court **GRANTS** Plaintiff's motion for summary judgment, Pl. Mot. (Dkt. No. 17), and **DENIES** Defendant's cross-motion for summary judgment, Def. Mot. (Dkt. No. 20).  The Court **REMANDS** this case to the Social Security Administration for further proceedings on an open record consistent with this order.  The Clerk is directed to enter judgment in favor of Plaintiff and close the case.

**IT IS SO ORDERED.**

Dated:    8/18/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

15